**CT Corporation**

**Service of Process Transmittal**
10/02/2020
CT Log Number 538340883

| | |
|---|---|
| **TO:** | Kathleen Lopilato<br>Auto-Owners Insurance Company<br>6101 Anacapri Blvd<br>Lansing, MI 48917-3999 |
| **RE:** | **Process Served in Missouri** |
| **FOR:** | OWNERS INSURANCE COMPANY (Domestic State: OH) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Neco, Inc., etc., Pltf. vs. Owners Insurance Company, Dft. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 20BACV03022 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Clayton, MO |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 10/02/2020 postmarked on 09/28/2020 |
| **JURISDICTION SERVED :** | Missouri |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/02/2020, Expected Purge Date: 10/07/2020 |
| | Image SOP |
| | Email Notification, Kathleen Lopilato  lopilato.kathleen@aoins.com |
| | Email Notification, Terri Mccrumb  mccrumb.terri@aoins.com |
| | Email Notification, Lance Arnott  SOPVerification@wolterskluwer.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 208 South LaSalle Street<br>Suite 814<br>Chicago, IL 60604 |
| **For Questions:** | 866-331-2303<br>CentralTeam1@wolterskluwer.com |

Page 1 of 1 / DM

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

MISSOURI DEPARTMENT OF COMMERCE AND INSURANCE
PO BOX 690
JEFFERSON CITY, MO 65102-0690

CERTIFIED MAIL

7018 0680 0002 2803 9866



U.S. POSTAGE >> PITNEY BOWES

ZIP 65109 $ 007.80⁰
02 4W
0000345140 SEP 28 2020

FIRST CLASS MAIL

OWNERS INSURANCE COMPANY
CT CORPORATION SYSTEM
120 SOUTH CENTRAL AVE
SUITE 400
CLAYTON, MO 63105

State of Missouri

# Department of Commerce and Insurance



**TO:** Corporate Secretary (or United States Manager or Last Appointed General Agent) of

OWNERS INSURANCE COMPANY
CT CORPORATION SYSTEM
120 SOUTH CENTRAL AVE SUITE 400
CLAYTON, MO 63105

**RE:** Court: Boone Co. Circuit Court, Case Number: 20BA-CV03022

You will take notice that original process in the suit against you, a copy of which is attached hereto and sent to you by certified mail, was duly served upon you at Jefferson City, Missouri, by serving the same on the Director of the Department of Commerce and Insurance of the state of Missouri, Dated at Jefferson City, Missouri this Monday, September 28, 2020.

_Chlora Lindley-Myers_
Director of Commerce and Insurance



# IN THE 13TH JUDICIAL CIRCUIT, BOONE COUNTY, MISSOURI

**SERVICE COPY**

| Judge or Division: KEVIN M J CRANE | Case Number: 20BA-CV03022 | SOP RECEIPT DATE SEP 28 2020 MISSOURI DEPARTMENT OF COMMERCE AND INSURANCE |
|---|---|---|
| Plaintiff/Petitioner: NECO INC D/B/A PLAY IT AGAIN SPORTS #11488 vs. | Plaintiff's/Petitioner's Attorney/Address JAMES MORRIS POWELL 11 NORTH SEVENTH STREET COLUMBIA, MO 65201 | |
| Defendant/Respondent: OWNERS INSUARNACE COMPANY | Court Address: 705 E Walnut COLUMBIA, MO 65201 | |
| Nature of Suit: CC Breach of Contract | | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:** OWNERS INSUARNACE COMPANY
DIVISION OF INSURANCE
301 W. HIGH STREET #630
JEFFERSON CITY, MO 65101

*COURT SEAL OF BOONE COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

_____9/24/2020_____    _____/s/ K. Chamberlin_____
Date    Clerk

Further Information: _____

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.
I certify that I have served the above summons by: (check one)
☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).
☐ other: _____.

Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____    _____
Printed Name of Sheriff or Server    Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:
Subscribed and sworn to before me on _____ (date).
(Seal)
My commission expires: _____    _____
Date    Notary Public

**Sheriff's Fees, if applicable**
Summons    $_____
Non Est    $_____
Sheriff's Deputy Salary
Supplemental Surcharge    $   10.00
Mileage    $_____ (_____ miles @ $_____ per mile)
**Total**    $_____

[ ATTORNEY TO PAY BCSD DIRECTLY ]

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**20BA-CV03022**

*Electronically Filed - Boone - September 18, 2020 - 05:08 PM*

**SERVICE COPY**

IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

| | |
|---|---|
| NECO, Inc. d/b/a Play It Again Sports, ) | |
|                          Plaintiff, ) | |
| ) | |
| v. ) | Case No: |
| ) | |
| Owners Insurance Company, ) | Jury Trial Demanded |
| **Serve at:** ) | |
| Division of Insurance ) | |
| 301 W High St # 630 ) | |
| Jefferson City, MO 65101 ) | |
|                          Defendant. ) | |

## PETITION

NOW COMES NeCo, Inc., a Missouri Corporation, d/b/a Play It Again Sports, for its Complaint against Defendant Owners Insurance Company ("Defendant" or "Owners"), and alleges as follows:

## INTRODUCTION

1. Plaintiff is a franchisee operating a Play It Again Sports store that sells sports equipment and apparel. Plaintiff's store operates in Columbia, Missouri.

2. In March 2020, the City of Columbia Director of Public Health issued orders closing non-essential businesses, such as Plaintiff's store, and ordering citizens to stay home. In April 2020, the Director of the Missouri Department of Health and Senior Services entered a similar order covering the entire state. Plaintiff suffered a staggering loss of business as a result of these executive orders.

3. Plaintiff is insured under a commercial property insurance policy issued by Defendant. Plaintiff purchased the policy to protect its livelihood in the event of an unforeseen interruption of its business, and Plaintiff faithfully paid premiums over the years to obtain this protection.

4. The COVID-19 pandemic and ensuing government-mandated shutdown of Plaintiff's business are precisely the sort of unforeseen, economically calamitous events Plaintiff sought to insure itself against when it purchased insurance from Defendant. But when Plaintiff

made a claim for coverage as a result of these events, Defendant summarily denied Plaintiff's claim in reliance on exclusions that clearly do not apply.

5. Specifically, Defendant denied Plaintiff's claim on the erroneous basis that there was no "direct physical loss of or damage to" Plaintiff's property. Defendant also asserted the governmental action, pollution and consequential damages exclusions bar coverage. (A copy of Owner's denial letter is attached as Exhibit A.)

6. Defendant's denial of Plaintiff's claim was arbitrary, unreasonable, contrary to the language of Plaintiff's insurance policy, contrary to the undisputed facts, and contrary to law.

7. Due to Defendant's wrongful denial of coverage, Plaintiff brings this action for a declaratory judgment establishing that it is entitled to receive the benefit of the insurance coverage it purchased, for indemnification of the business losses it has sustained, for breach of contract, and for bad faith claims handling.

**PARTIES**

8. Plaintiff NeCo, Inc., a Missouri corporation, d/b/a Play It Again Sports is a Missouri corporation with its principal place of business in Columbia, Missouri.

9. Upon information and belief, Defendant Owners Insurance Company is an Auto-Owners Insurance Group Company with its principal place of business in Michigan and licensed in Missouri.

**FACTUAL BACKGROUND**

10. In March 2020, officials in Columbia, Missouri—as in many other states and municipalities—ordered the closing of all non-essential businesses (including stores) due to the COVID-19 pandemic.

11. On March 24, 2020, Stephanie Browning, Director of Public Health and Human Services for Columbia, issued a Stay at Home Order effective 8 a.m. on March 25th. The Order required: "All businesses and operations within the City, except Essential Businesses and Operations are required to cease all activities except Minimum Basic Operations . . . ." On April 3, 2020, the Director of the Missouri Department of Health and Senior Services issued a similar Stay at Home order covering the entire state of Missouri. The state-wide Stay at Home Order was later extended until May 3, 2020. (The Orders described in this paragraph are collectively referred to as the "Executive Orders.")

12. Under the Executive Orders, Plaintiff was not permitted to open its store to customers for more than 5 weeks.

13. Plaintiff's busiest and most profitable period is from March to May each year.

14. As a result of the Executive Orders, Plaintiff suffered severe interruption to its business and critical loss of income.

## The Policy

15. Plaintiff is insured by Owners Insurance Company Businessowners Insurance Policy No. 51-316-137-00 for the period July 24, 2019 to July 24, 2020 (the "Policy," attached as Exhibit B). Plaintiff obtained the Policy to ensure that it would be reimbursed for lost income in the event that its business operations were interrupted.

16. Plaintiff has faithfully paid premium to Defendant on the Policy and similar policies since 2017.

17. The Policy is an "all-risk" property insurance policy, meaning that it broadly covers risk of loss of or damage to Plaintiff's property, unless a coverage exclusion applies.

18. Under the terms of the Policy, Defendant agreed to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Ex. B, form BP 0002 01 87, p. 1 of 21.) "Covered Cause of Loss" is defined as "Risks of Direct Physical Loss" that are not otherwise excluded or limited (*Id.*) "Direct physical loss" is not defined in the Policy.

19. As part of this coverage, Defendant agreed to "pay for the actual loss of Business Income" sustained by Plaintiff "due to the necessary suspension of [Plaintiff's] 'operations'" during the "period of restoration." (Ex. B, endorsement form 54227 (8-00), pg. 1 of 2.) The suspension must be "caused by direct physical loss of or damage to property at the described premises," and "must be caused by or resulting from a Covered Cause of Loss." (*Id.*)

20. "Business Income" is defined as (a) "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred" but for the loss; and (b) "[c]ontinuing normal operating expenses incurred, including payroll." (*Id.*) "Suspension" is not defined in the Policy.

21. Defendant further agreed to cover "necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property." (*Id.*)

- 3 -

22.     "Extra Expense" is defined to include expenses incurred "[t]o avoid or minimize the suspension of business and to continue 'operations.'"

23.     In summary, under the Policy, when a Covered Cause of Loss—such as a global health crisis and forced abrogation of Plaintiff's business—causes Plaintiff's business operations to be suspended, Defendant is obligated to pay for the loss and/or damage Plaintiff experiences as a result, including lost business income and extra expenses.

## Plaintiff's Claim and Defendant's Denial

24.     On April 16, 2020, Plaintiff made a claim under the Policy for losses suffered as a result of the Executive Orders relating to the Covid-19 global pandemic (the "Claim"). (A copy of Plaintiff's claim letter is attached as Exhibit C.)

25.     On May 15, 2020, without conducting an investigation, Defendant denied the claim. Defendant decided there was no coverage because there was no direct physical loss of or damage to Plaintiff's property and, if there were, coverage could be precluded by the governmental action exclusion, pollution exclusion or consequential losses exclusion. (Exhibit A.)

26.     Notwithstanding the conclusion made by Defendant, Plaintiff has suffered both a "direct physical loss of" and "damage to" its property as a result of the Executive Orders.

27.     The Policy does not define "damage" or "loss;" therefore, under well-recognized, undisputed rules of construction, these terms are to be given their generally understood meaning, and any ambiguity should be construed in favor of coverage for Plaintiff and against Defendant, who selected the language for inclusion in its adhesion contracts.

28.     Common dictionary definitions of "loss" include "deprivation" and "the harm or privation resulting from loss or separation." Common dictionary definitions of "damage" include the "harm caused to something in such a way as to impair its value, usefulness or normal function."

29.     The events described above have obviously deprived Plaintiff of the full use and value of its business. Additionally, these events have impaired the value and usefulness of the business and prevented it from serving its normal function. Therefore, under commonly accepted English usage, Plaintiff has suffered both "physical loss of" and "damage to" its insured premises.

30.     Because Plaintiff has suffered both a direct physical loss of its property and damage to its property, it has experienced a "Covered Cause of Loss" and is entitled to reimbursement under the Business Income provision of the Policy.

31. In denying Plaintiff's claim, Defendant cited an exclusion for any loss or damage caused by a "governmental action." (Exhibit A, p. 2, 4 of 4.) As with all exclusions, the insurer Defendant bears the burden to establish an exclusion bars coverage.

32. The governmental action exclusion bars coverage of the "[s]eizure or destruction of property by order of governmental authority." (Ex. B, BP 0002 01 87, pg. 7 of 21.)

33. Defendant's reliance on this provision is misplaced. In ordering residents to stay home to prevent the spread of Covid-19, neither the City of Columbia or the State of Missouri seized or destroyed any of Plaintiff's property.

34. Moreover, the Policy explicitly provides coverage for loss or damage caused by an "Ordinance or Law," so clearly the governmental authority exclusion should be narrowly construed to apply only to governmental actions that actually result in a seizure or destruction. (*See* Ex. B, form 54070.)

35. Defendant also relies on a pollution exclusion to deny coverage, stating coverage is excluded "to the extent the virus may be considered an irritant or contaminant." (Ex. A, pg. 4.)

36. Neither "irritant" nor "contaminant" is defined in the Policy and Defendant fails to explain in the denial letter how it could meet its burden demonstrate Covid-19 is either an irritant or contaminant. If Defendant had intended to exclude loss or damage due to a virus or pandemic, it could have included such language in its adhesion contract, but it chose not to do so.

37. Finally, Defendant asserts, without elaboration, that the Policy "also does not cover consequential losses due to a loss of market or a loss of use, as may be sustained by closure of the insured business." (Ex. A, pg. 4)

38. The full provision cited in the denial letter actually provides: "We will not pay for loss or damage caused by or resulting from any of the following . . . Consequential Losses: Delay, loss of use or loss of market." (Ex. B, form 0002 01 87, pg. 8 of 21.)

39. Plaintiff's loss and damage is the result of the Executive Orders ordering non-essential business like sports stores to close. Only circular reasoning could consider Plaintiff's loss and damage to be "caused by or resulting from" consequential losses. Defendant's insertion of the language "as may be sustained by closure of the insured business" does not save Defendant's argument. As above, Defendant bears the burden of proving an exclusion applies and the "consequential losses" exclusion does not.

40. Since none of the three exclusions relied on by Defendant apply to Plaintiff's claim, Plaintiff's loss and damage resulting from the Executive Orders issued to prevent the spread of Covid 19 are covered by the Policy.

## COUNT ONE

### BREACH OF CONTRACT: COVERAGE OF PROPERTY DAMAGE CLAIMS

41. Plaintiff repeats and realleges the allegations of paragraphs 1 through 40 as if fully set forth herein.

42. The Policy is an insurance contract under which Defendant was paid premiums in exchange for its promise to pay Plaintiff's claims for losses covered by the Policy, such as business losses incurred as a result of Executive Orders impairing Plaintiff's business operations due to the COVID-19 pandemic.

43. The Policy requires Defendant to pay Plaintiff "for the actual loss of Business Income" and Extra Expenses suffered while Plaintiff's business was impaired due to the Executive Orders.

44. Plaintiff has complied with all applicable provisions of the Policy, including payment of the premiums in exchange for coverage under the Policy, and yet Defendant has failed to fulfill its insurance coverage obligations under the Policy's clear and unambiguous terms.

45. By denying coverage for any losses or damage incurred by Plaintiff in connection with the Executive Orders and the COVID-19 pandemic, Defendant has breached its coverage obligations under the Policy.

46. The damages sustained by Plaintiff exceed $25,000.

WHEREFORE, Plaintiff seeks an award of compensatory damages in the amount of its Business Income and Extra Expenses losses, together with costs sustained herein and reasonable attorneys' fees.

## COUNT TWO

### DECLARATORY JUDGMENT: THE POLICY HAS BEEN TRIGGERED BY DIRECT PHYSICAL LOSS OF AND/OR DAMAGE TO PLAINTIFF'S PROPERTY AND THE POLICY'S GOVERNMENTAL AUTHORITY, POLLUTION AND CONSEQUENTIAL LOSSES EXCLUSIONS DO NOT APPLY

47. Plaintiff repeats and realleges the allegations of paragraphs 1 through 46 as if fully

set forth herein.

**48.** The Policy requires Defendant to pay Plaintiff "for the actual loss of Business Income" suffered and "necessary Extra Expenses" incurred while its business was impaired as the result of the Executive Orders.

**49.** Plaintiff has made a Claim for coverage for its lost business income under the terms of the Policy.

**50.** Defendant has asserted that Plaintiff is not entitled to its lost Business Income or Extra Expense because it did not suffer direct physical loss of, or damage to, its covered property.

**51.** Plaintiff suffered both a direct physical loss of its property, and damage to its property, as it was deprived of the normal, full use and value of its property.

**52.** In denying Plaintiff's Claim for coverage, Defendant asserted that Plaintiff's Claim is excluded under the Policy by a governmental authority exclusion.

**53.** The governmental authority exclusion does not apply to the Executive Orders that caused Plaintiff's Business Income losses because they did not result in the government seizing or destroying Plaintiff's property.

**54.** Defendant has also asserted that Plaintiff's Claim for coverage under the Policy is potentially excluded by a pollution exclusion endorsement in the Policy.

**55.** Plaintiff's Business Income losses were not caused by, and did not result from, an outbreak of the COVID-19 virus on Plaintiff's property and were not otherwise caused by the virus itself. Even if they were, Defendant has not demonstrated that Covid-19 is an "irritant" or "contaminant" as required for the exclusion to apply.

**56.** Defendant has also asserted that Plaintiff's Claim for coverage under the Policy is excluded by the "Consequential Losses" exclusion in the Policy.

**57.** However Plaintiff's losses are a consequence of the Executive Orders themselves, which are a Covered Cause of Loss.

**58.** As set forth above, true controversy exists between the parties concerning the parties' rights and obligations under the Policy.

WHEREFORE, Plaintiff seeks a declaratory ruling that the Business Income provision of the Policy has been triggered by direct physical loss of and damage to Plaintiff's property, and that the governmental authority, pollution and consequential losses exclusions do not apply here

because the Executive Orders do not seek to seize or destroy Plaintiff's property, Plaintiff's property has not been exposed to an irritant or contaminant, and Plaintiff's losses are not consequential losses as contemplated in the Policy.

## COUNT THREE
### BAD FAITH

59. Plaintiff repeats and realleges the allegations of paragraphs 1 through 58 as if fully set forth herein.

60. The Policy is an insurance contract under which Defendant was paid premiums in exchange for its promise to pay Plaintiff's claims for losses covered by the Policy, such as business losses incurred as a result of government orders impairing Plaintiff's business operations due to the COVID-19 pandemic.

61. The Policy requires Defendant to pay Plaintiff "for the actual loss of Business Income" suffered while Plaintiff's business was impaired as the result of the Executive Orders.

62. Plaintiff has made a claim for, and is entitled to, coverage for its lost business income under the terms of the Policy.

63. Defendant denied Plaintiff's Claim on the grounds that (1) there was no physical loss of or damage to Plaintiff's property, and (2) Plaintiff's Claim is excluded from coverage due to the governmental authority, pollution and consequential exclusions contained in the Policy.

64. In corresponding with Plaintiff's counsel, Defendant failed to appreciate or investigate the basis for the Claim.

65. Defendant owed a duty to Plaintiff to deal fairly and act in good faith.

66. In its handling of Plaintiff's claim for benefits under the Policy, and as a matter of routine practice in handling similar claims, Defendant breached its duty to deal fairly and in good faith toward Plaintiff in the following respects:

   a. Failing to fully pay Plaintiff the benefits to which Plaintiff was entitled under the Policy at a time when Defendant knew Plaintiff was entitled to those benefits;

   b. Withholding payment of benefits knowing that Plaintiff's claim for benefits was valid;

   c. Unreasonably delaying payment of benefits without a reasonable basis;

- 8 -

d. Intentionally and recklessly misinterpreting and misapplying provisions of the Policy and looking for ways to avoid paying some or all of Plaintiff's Claim;

e. Failing to adopt and implement reasonable standards for the prompt investigation, evaluation and handling of claims arising under its policies, including Plaintiff's;

f. Taking longer than the 15 business days agreed to in the Policy to respond to Plaintiff's claim; and

g. Failing to attempt to act in good faith to effectuate a prompt and fair settlement of Plaintiff's claim.

67. The unreasonable conduct of the Defendant in the handling of Plaintiff's Claim was intentional, willful, wanton, and was committed with a reckless disregard for the rights of the Plaintiff.

68. Plaintiff has retained an attorney to prosecute this action and is thus entitled to reasonable attorneys fees as well as the costs expended in pursuit of this litigation.

WHEREFORE, Plaintiff seeks an award of compensatory and punitive damages, as well as costs and attorneys' fees to the full extent recoverable under Missouri law.

### JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: September 18, 2020        Respectfully Submitted,

*[signature]*

James M. Powell, Mo. Bar No. 33229
Rule 55.03(a) Certificate: Original signed by James M. Powell
Jones, Schneider and Stevens
11 N. Seventh Street
Columbia, Missouri 65201
(573) 449-2451
Fax: (573) 443-8620
jpowell@11-7law.com

Daniel I. Schlessinger (*pro hac vice forthcoming*)
JASZCZUK P.C.
311 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 442-0509
dschlessinger@jaszczuk.com

*Attorneys for Plaintiff*