IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| NeCo, Inc., a Missouri Corporation, d/b/a Play It Again Sports ) | Civil Action No:2:20-cv-04211-SRB |
| Plaintiff, ) | First Amended Complaint |
| v. ) | |
| Owners Insurance Company, ) | |
| Defendant. ) | |

**FIRST AMENDED COMPLAINT**

NOW COMES NeCo, Inc., a Missouri Corporation, d/b/a Play It Again Sports, for its First Amended Complaint against Defendant Owners Insurance Company ("Defendant" or "Owners"), and alleges as follows:

**Introduction**

1. This action arises out of Defendant's failure to provide insurance coverage. The Coronavirus pandemic ("COVID-19") and the resulting response by state and local governments have caused direct physical loss of and damage to Plaintiff's property and have interrupted Plaintiff's business.

2. Plaintiff is a franchisee operating a Play It Again Sports store that sells sports equipment and apparel. Plaintiff's store operates in Columbia, Missouri.

3. In early 2020, COVID-19 began spreading throughout the United States, including in Missouri. As COVID-19 is rapidly spread from person to person, many times by asymptomatic carriers, it is likely that COVID-19 has been present in Plaintiff's store. In fact, the

1

virus is so contagious that many doctors and organizations have said to assume that everyone has the virus.

4. As a result of the COVID-19 pandemic, in March 2020, the City of Columbia Director of Public Health issued orders closing non-essential businesses, such as Plaintiff's store, and ordering citizens to stay home. In April 2020, the Director of the Missouri Department of Health and Senior Services entered a similar order covering the entire state. Plaintiff was forced to suspend its business and suffered a staggering loss of income as a result of COVID-19 and these executive orders.

5. Plaintiff is insured under a commercial property insurance policy issued by Defendant. Plaintiff purchased the policy to protect its livelihood in the event of an unforeseen interruption of its business, and Plaintiff faithfully paid premiums over the years to obtain this protection.

6. The COVID-19 pandemic and ensuing government-mandated shutdown of Plaintiff's business are precisely the sort of unforeseen, economically calamitous events Plaintiff sought to insure itself against when it purchased insurance from Defendant. But when Plaintiff made a claim for coverage as a result of these events, Defendant summarily denied Plaintiff's claim in reliance on exclusions that clearly do not apply.

7. Specifically, Defendant denied Plaintiff's claim on the erroneous basis that there was no "direct physical loss of or damage to" Plaintiff's property. Defendant also asserted the governmental action, pollution and consequential damages exclusions bar coverage. (A copy of Owner's denial letter is attached as Exhibit A.)

8. Defendant's denial of Plaintiff's claim was arbitrary, unreasonable, contrary to the language of Plaintiff's insurance policy, contrary to the undisputed facts, and contrary to law.

2

Case 2:20-cv-04211-SRB   Document 26   Filed 12/28/20   Page 2 of 16

9. Due to Defendant's wrongful denial of coverage, Plaintiff brings this action for a declaratory judgment establishing that it is entitled to receive the benefit of the insurance coverage it purchased, for indemnification of the business losses it has sustained and for breach of contract.

**Parties**

10. Plaintiff NeCo, Inc., a Missouri corporation, d/b/a Play It Again Sports is a Missouri corporation with its principal place of business in Columbia, Missouri.

11. Upon information and belief, Defendant Owners Insurance Company is an Auto-Owners Insurance Group Company with its principal place of business in Michigan and licensed in Missouri.

**Jurisdiction and Venue**

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. This Court has personal jurisdiction over Owners pursuant to Missouri's long-arm statute because this Complaint concerns contracts Owners made to insure property and/or risk in Missouri, business that Owners transacted within Missouri, and one or more contracts and/or promises Owners made that are substantially connected with Missouri. In addition, Owners exercises systematic and continuous contacts with Missouri by doing business in Missouri, serving insureds in Missouri, and seeking additional business in Missouri.

14. Venue is proper in the United States District Court for the Western District of Missouri pursuant to 28 U.S.C. § 1391 because "a substantial part of the events or omissions giving rise to the claim occurred" in this District and the property that is subject to this action is situated in this District.

## Factual Background

15. The novel coronavirus or SARS-CoV-2 has spread widely and rapidly across the United States. The illness related to SARS-CoV-2 is "novel coronavirus disease 2019," commonly abbreviated to "COVID-19." The virus and related illness are referred to in this Complaint interchangeably as "COVID-19."

16. Over 320,000 Americans have died of COVID-19 as of the date of this filing according to the Centers for Disease Control and Prevention ("CDC").

17. COVID-19 is spread by a number of methods, including "community spread," meaning that some people have been infected and it is not known how or where they became exposed. Moreover, many people with COVID-19 are asymptomatic and spread the disease without knowing they have it. Public health authorities, including the CDC, have reported significant ongoing community spread of the virus including instances of community spread in all 50 states.

18. A growing body of evidence suggests that the virus transmits both through droplets, when someone sneezes and coughs, and aerosols, which are produced by normal breathing.

19. Aerosols are particularly concerning because unlike droplets, which stay airborne for only a few seconds, aerosols are water droplets suspended in air and can remain suspended for hours, until gravity ultimately forces them to the nearest surface below.

20. Consequently, aerosols can spread widely through air flow and settle on surfaces hundreds of feet away from any infected individual. Thus, someone not even in the vicinity of an infected person can unknowingly touch an infected surface, later touch their face, and become infected.

21. According to the CDC, the incubation period for the coronavirus is as long as 14 days. Current evidence shows that the first death from COVID-19 occurred as early as February 6, 2020 – weeks earlier than previously reported, suggesting that the virus circulated in the United States far longer than previously assumed. It is likely customers, employees, and/or other visitors to the insured property this year were infected with the coronavirus and thereby caused direct physical loss of and damage to the property.

22. There have been at least 390,000 cases of COVID-19 in Missouri as of the date of this filing.

23. According to Plaintiff's records, even though Plaintiff's business had decreased from the previous year due to COVID-19, the resulting Executive Orders, and public concerns regarding the pandemic, Plaintiff's store conducted over 3,400 transactions between January and March of 2020. Although the total number of customers is unknown, it is likely that there was more than one person in the store for each transaction because most customers that come in during the spring are outfitting their kids.

24. During the period of the insurance policy issued to Plaintiff by Defendant, Plaintiff's store conducted several thousand transactions. Due to the volume of customers coming into Plaintiff's business, it is highly likely that COVID-19 was present on Plaintiff's premises.

25. The presence of COVID-19 on property impairs its value, usefulness and/or normal function and causes "direct physical loss of or damage to" property.

26. The presence of people infected with or carrying COVID-19 renders physical property unsafe and unusable, resulting in "direct physical loss of or damage to" that property.

27. The presence of COVID-19 has caused civil authorities throughout the country to

issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's business.

28. In an effort to combat the virus and slow the spread of COVID-19, state and local governments across the country have imposed directives requiring residents to remain in their homes except to perform certain "essential" activities, like shopping for food, going to see a doctor, or getting fresh air.

29. The state and local directives typically require businesses deemed "non-essential" to be closed and prohibit in-person work.

30. In March 2020, officials in Columbia, Missouri—as in many other states and municipalities—ordered the closing of all non-essential businesses (including stores) due to the COVID-19 pandemic.

31. On March 24, 2020, Stephanie Browning, Director of Public Health and Human Services for Columbia, issued a Stay at Home Order effective 8 a.m. on March 25th. The Order required: "All businesses and operations within the City, except Essential Businesses and Operations are required to cease all activities except Minimum Basic Operations . . . ."

32. On April 3, 2020, the Director of the Missouri Department of Health and Senior Services issued a similar Stay at Home order covering the entire state of Missouri. The state-wide Stay at Home Order was later extended until May 3, 2020. (The Orders described herein are collectively referred to as the "Executive Orders.").

33. Under the Executive Orders, Plaintiff was not permitted to open its store to customers for more than 5 weeks.

34. Plaintiff's busiest and most profitable period is from March to May each year.

35. As a result of COVID-19 and the resulting Executive Orders, Plaintiff suffered

severe interruption to its business and critical loss of income.

## The Policy

36.     Plaintiff is insured by Owners Insurance Company Businessowners Insurance Policy No. 51-316-137-00 for the period July 24, 2019 to July 24, 2020 (the "Policy," attached as Exhibit B).  Plaintiff obtained the Policy to ensure that it would be reimbursed for lost income in the event that its business operations were interrupted.

37.     Plaintiff has faithfully paid premiums to Defendant on the Policy and similar policies since 2017.

38.     The Policy is an "all-risk" property insurance policy, meaning that it broadly covers risk of loss of or damage to Plaintiff's property, unless a coverage exclusion applies.

39.     Under the terms of the Policy, Defendant agreed to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."  (Ex. B, form BP 0002 01 87, p. 1 of 21.)  "Covered Cause of Loss" is defined as "Risks of Direct Physical Loss" that are not otherwise excluded or limited (*Id*.)  "Direct physical loss" is not defined in the Policy.

40.     As part of this coverage, Defendant agreed to "pay for the actual loss of Business Income" sustained by Plaintiff "due to the necessary suspension of [Plaintiff's] 'operations'" during the "period of restoration."  (Ex. B, endorsement form 54227 (8-00), pg. 1 of 2.)  The suspension must be "caused by direct physical loss of or damage to property at the described premises," and "must be caused by or resulting from a Covered Cause of Loss."  (*Id*.)

41.     "Business Income" is defined as (a) "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred" but for the loss; and (b) "[c]ontinuing normal operating expenses incurred, including payroll."  (*Id*.) "Suspension" is not defined in the

7

Policy.

42. Defendant further agreed to cover "necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property." (*Id.*)

43. "Extra Expense" is defined to include expenses incurred "[t]o avoid or minimize the suspension of business and to continue 'operations.'"

44. The presence of virus or disease can constitute physical loss of or damage to property, as the insurance industry has recognized since at least 2006. When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm—Insurance Services Office, Inc. or "ISO"—circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

45. The ISO also created a new "amendatory endorsement" to exclude loss due to virus or bacteria from coverage afforded by certain insurance policies. The ISO amendatory endorsement states that there is "no coverage for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" (the "Virus Exclusion").

46. Some insurers added the Virus Exclusion to their policies that provide Business

Income (also referred to as "business interruption") coverage. But importantly, unlike some policies issued by other insurers—and perhaps by Defendant itself in other circumstances—the Policy does not involve an exclusion for virus or pandemics.

47. In summary, under the Policy, when a Covered Cause of Loss—such as COVID-19, a global health crisis, and forced abrogation of Plaintiff's business—causes Plaintiff's business operations to be suspended, Defendant is obligated to pay for the loss and/or damage Plaintiff experiences as a result, including lost business income and extra expenses.

### Plaintiff's Claim and Defendant's Denial

48. On April 16, 2020, Plaintiff made a claim under the Policy for losses suffered as a result of the Executive Orders and the Covid-19 global pandemic (the "Claim"). (A copy of Plaintiff's claim letter is attached as Exhibit C.)

49. On May 15, 2020, without conducting an investigation, Defendant denied the claim. Defendant decided there was no coverage because there was no direct physical loss of or damage to Plaintiff's property and, if there were, coverage could be precluded by the governmental action exclusion, pollution exclusion or consequential losses exclusion. (Exhibit A.)

50. Notwithstanding the conclusion made by Defendant, Plaintiff has suffered both a "direct physical loss of" and "damage to" its property as a result of COVID-19 and the resulting Executive Orders.

51. The Policy does not define "damage" or "loss;" therefore, under well-recognized, undisputed rules of construction, these terms are to be given their generally understood meaning, and any ambiguity should be construed in favor of coverage for Plaintiff and against Defendant, who selected the language for inclusion in its adhesion contracts.

9

Case 2:20-cv-04211-SRB   Document 26   Filed 12/28/20   Page 9 of 16

52. Common dictionary definitions of "loss" include "deprivation" and "the harm or privation resulting from loss or separation." Common dictionary definitions of "damage" include the "harm caused to something in such a way as to impair its value, usefulness or normal function."

53. The events described above have obviously deprived Plaintiff of the full use and value of its business. Additionally, these events have impaired the value and usefulness of the business and prevented it from serving its normal function. Therefore, under commonly accepted English usage, Plaintiff has suffered both "physical loss of" and "damage to" its insured premises.

54. Because Plaintiff has suffered both a direct physical loss of its property and damage to its property, it has experienced a "Covered Cause of Loss" and is entitled to reimbursement under the Business Income provision of the Policy.

55. In denying Plaintiff's claim, Defendant cited an exclusion for any loss or damage caused by a "governmental action." (Exhibit A, p. 2, 4 of 4.) As with all exclusions, the insurer Defendant bears the burden to establish an exclusion bars coverage.

56. The governmental action exclusion bars coverage of the "[s]eizure or destruction of property by order of governmental authority." (Ex. B, BP 0002 01 87, pg. 7 of 21.)

57. Defendant's reliance on this provision is misplaced. In ordering residents to stay home to prevent the spread of Covid-19, neither the City of Columbia or the State of Missouri seized or destroyed any of Plaintiff's property.

58. Moreover, the Policy explicitly provides coverage for loss or damage caused by an "Ordinance or Law," so clearly the governmental authority exclusion should be narrowly construed to apply only to governmental actions that actually result in a seizure or destruction.

10

(*See* Ex. B, form 54070.)

59. Defendant also relied on a pollution exclusion to deny coverage. (Ex. A, pg. 4.)

60. Neither "irritant" nor "contaminant" is defined in the Policy and Defendant fails to explain in the denial letter how it could meet its burden demonstrate COVID-19 falls within the pollution exclusion. If Defendant had intended to exclude loss or damage due to a virus or pandemic, it could have included such language in its adhesion contract, but it chose not to do so.

61. Finally, Defendant asserts, without elaboration, that the Policy "also does not cover consequential losses due to a loss of market or a loss of use, as may be sustained by closure of the insured business." (Ex. A, pg. 4)

62. The full provision cited in the denial letter provides: "We will not pay for loss or damage caused by or resulting from any of the following . . . Consequential Losses: Delay, loss of use or loss of market." (Ex. B, form 0002 01 87, pg. 8 of 21.)

63. Plaintiff's loss and damage is the result of COVID-19 and the Executive Orders ordering non-essential businesses like sports stores to close. Only circular reasoning could consider Plaintiff's loss and damage to be "caused by or resulting from" consequential losses. Defendant's insertion of the language "as may be sustained by closure of the insured business" does not save Defendant's argument. As above, Defendant bears the burden of proving an exclusion applies and the "consequential losses" exclusion does not.

64. Since none of the three exclusions relied on by Defendant apply to Plaintiff's claim, Plaintiff's loss and damage resulting from COVID-19 and the Executive Orders issued to prevent its spread are covered by the Policy.

## COUNT ONE
### BREACH OF CONTRACT: COVERAGE OF PROPERTY DAMAGE OR LOSS CLAIMS

65. Plaintiff repeats and realleges the allegations of paragraphs 1 through 64 as if

11

fully set forth herein.

66. The Policy is an insurance contract under which Defendant was paid premiums in exchange for its promise to pay Plaintiff's claims for losses covered by the Policy, such as business losses incurred as a result COVID-19 and resulting Executive Orders impairing Plaintiff's business operations.

67. The Policy requires Defendant to pay Plaintiff "for the actual loss of Business Income" and Extra Expenses suffered while Plaintiff's business was impaired due to COVID-19 and the Executive Orders.

68. Plaintiff has complied with all applicable provisions of the Policy, including payment of the premiums in exchange for coverage under the Policy, and yet Defendant has failed to fulfill its insurance coverage obligations under the Policy's clear and unambiguous terms.

69. By denying coverage for any losses or damage incurred by Plaintiff in connection with the Executive Orders and the COVID-19 pandemic, Defendant has breached its coverage obligations under the Policy.

WHEREFORE, Plaintiff seeks an award of compensatory damages in the amount of its Business Income and Extra Expenses losses, together with costs sustained herein and reasonable attorneys' fees.

## COUNT TWO
### DECLARATORY JUDGMENT: THE POLICY HAS BEEN TRIGGERED BY DIRECT PHYSICAL LOSS OF AND/OR DAMAGE TO PLAINTIFF'S PROPERTY DUE TO THE GOVERNMENT ORDERS AND THE POLICY'S EXCLUSIONS DO NOT APPLY

70. Plaintiff repeats and realleges the allegations of paragraphs 1 through 69 as if fully set forth herein.

71. The Policy requires Defendant to pay Plaintiff "for the actual loss of Business

Income" suffered and "necessary Extra Expenses" incurred while its business was impaired as the result of the Executive Orders.

72. Plaintiff has made a Claim for coverage for its lost business income under the terms of the Policy.

73. Defendant has asserted that Plaintiff is not entitled to its lost Business Income or Extra Expense because it did not suffer direct physical loss of, or damage to, its covered property.

74. Plaintiff suffered both a direct physical loss of its property and damage to its property due to the Executive Orders.

75. In denying Plaintiff's Claim for coverage, Defendant asserted that Plaintiff's Claim is excluded under the Policy by a governmental authority exclusion.

76. The governmental authority exclusion does not apply to the Executive Orders that caused Plaintiff's Business Income losses because they did not result in the government seizing or destroying Plaintiff's property.

77. Defendant has also asserted that Plaintiff's Claim for coverage under the Policy is potentially excluded by a pollution exclusion endorsement in the Policy.

78. However, the Executive Orders are not encompassed by the pollution exclusion.

79. Defendant has also asserted that Plaintiff's Claim for coverage under the Policy is excluded by the "Consequential Losses" exclusion in the Policy.

80. However, Plaintiff's losses are a consequence of the Executive Orders, which are a Covered Cause of Loss.

81. As set forth above, true controversy exists between the parties concerning the parties' rights and obligations under the Policy.

13

WHEREFORE, Plaintiff seeks a declaratory ruling that the Business Income provision of the Policy has been triggered by direct physical loss of and damage to Plaintiff's property due to the Executive Orders, and that the governmental authority, pollution and consequential losses exclusions do not apply here because the Executive Orders do not seek to seize or destroy Plaintiff's property, the Executive Orders do not fall within the pollution exclusion, and Plaintiff's losses are not consequential losses as contemplated in the Policy.

### COUNT THREE
**DECLARATORY JUDGMENT: IN THE ALTERNATIVE, THE POLICY HAS BEEN TRIGGERED BY DIRECT PHYSICAL LOSS OF AND/OR DAMAGE TO PLAINTIFF'S PROPERTY DUE TO THE GOVERNMENT ORDERS AND PRESENCE OF VIRUS ON PREMISES AND THE POLICY'S EXCLUSIONS DO NOT APPLY**

82. Plaintiff repeats and realleges the allegations of paragraphs 1 through 81 as if fully set forth herein.

83. The Policy requires Defendant to pay Plaintiff "for the actual loss of Business Income" suffered and "necessary Extra Expenses" incurred while its business was impaired as the result of the presence of COVID-19 on premises and resulting Executive Orders.

84. Plaintiff has made a Claim for coverage for its lost business income under the terms of the Policy.

85. Defendant has asserted that Plaintiff is not entitled to its lost Business Income or Extra Expense because it did not suffer direct physical loss of, or damage to, its covered property.

86. Plaintiff suffered both a direct physical loss of its property and damage to its property due to the likely presence of COVID-19 on premises and resulting Executive Orders.

87. In denying Plaintiff's Claim for coverage, Defendant asserted that Plaintiff's Claim is excluded under the Policy by a governmental authority exclusion.

88. The governmental authority exclusion does not apply to the Executive Orders that caused Plaintiff's Business Income losses because they did not result in the government seizing or destroying Plaintiff's property.

89. Defendant has also asserted that Plaintiff's Claim for coverage under the Policy is potentially excluded by a pollution exclusion endorsement in the Policy.

90. However, COVID-19 is not encompassed by the pollution exclusion.

91. Defendant has also asserted that Plaintiff's Claim for coverage under the Policy is excluded by the "Consequential Losses" exclusion in the Policy.

92. However, Plaintiff's losses are a consequence of the presence of COVID-19 on premises and the resulting Executive Orders, which are Covered Causes of Loss.

93. As set forth above, true controversy exists between the parties concerning the parties' rights and obligations under the Policy.

WHEREFORE, Plaintiff seeks a declaratory ruling that the Business Income provision of the Policy has been triggered by direct physical loss of and damage to Plaintiff's property due to the presence of COVID-19 on premises and resulting Executive Orders, and that the governmental authority, pollution and consequential losses exclusions do not apply here because the Executive Orders do not seek to seize or destroy Plaintiff's property, COVID-19 does not fall within the pollution exclusion, and Plaintiff's losses are not consequential losses as contemplated in the Policy.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated: December 28, 2020	Respectfully Submitted,

    */s/ Dyanna Ballou*
Dyanna Ballou Missouri Bar # 48124
RASMUSSEN DICKEY MOORE LLC
1001 East 101st Terrace, Suite 300
Kansas City, MO 64131
Tel: (816) 960-1611
dballou@rdm.law

Daniel I. Schlessinger (admitted *pro hac vice*)
JASZCZUK P.C.
311 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 442-0509
dschlessinger@jaszczuk.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

    I certify that on December 28, 2020, this document was filed with the Clerk of the Court using the CM/ECF system, which sent notification to all counsel of record.

    */s/ Dyanna Ballou*
Dyanna Ballou
*Attorney for Plaintiff*