IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| NECO, INC. d/b/a Play It Again Sports, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-04211-SRB |
| | ) | |
| OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant Owners Insurance Company's ("Owners") Motion to Dismiss Amended Complaint. (Doc. #28.) The motion has been fully briefed and the Court held oral arguments via teleconference on the motion on February 12, 2021. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

### I. BACKGROUND

The relevant factual background of this case is briefly set forth below. Because this matter is before the Court on a motion to dismiss, NeCo, Inc.'s ("Plaintiff") factual allegations in its Amended Complaint are taken as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiff operates a Play It Again Sports store that sells sports equipment and apparel in Columbia, Missouri. Plaintiff purchased a businessowners insurance policy (the "Policy") from Owners, an Auto-Owners Insurance Group Company, for the period of July 24, 2019 to July 24, 2020. The Policy provides that "[Owners] will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any

Covered Cause of Loss" unless the claimed loss is excluded or otherwise limited. (Doc. #26-2, p. 113.)[1] A Covered Cause of Loss is required to invoke the coverage provisions of the Policy. Under the Policy, a "Covered Cause of Loss" is defined as "RISKS OF DIRECT PHYSICAL LOSS[.]" (Doc. #26-2, p. 113.) The Policy does not define the term "direct physical loss," and the Policy does not contain an exclusion clause for viruses. The Policy provisions at issue in this case and relevant to this Court's order are set forth below.

First, the Policy provides for Business Income coverage in the event of a Covered Loss:

> [Owners] will pay for the actual loss of Business Income[2] you sustained due to the necessary suspension of your "operations"[3] during the "period of restoration."[4] The suspension must be caused by direct physical loss of or damage to property at the described premises . . . caused by or resulting from any Covered Cause of Loss.

(Doc. #26-2, p. 36.) Second, the Policy provides for Extra Expense coverage, which states that:

> [Owners] will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises . . . caused by or resulting from a Covered Clause or Loss.
>
> Extra Expense means expense incurred:
>
>> (1) To avoid or minimize the suspension of business and to continue "operations":
>>
>>> (a) At the described premises; or
>>> (b) At replacement premises or at temporary locations, including:
>>>> (i) Relocation expenses; and
>>>> (ii) Costs to equip and operate the replacement or temporary locations.

---

[1] All Policy page numbers refer to the pagination automatically generated by CM/ECF.

[2] The Policy defines "Business Income" as "(1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred, and (2) Continuing normal operating expenses incurred, including payroll." (Doc. #26-2, p. 36.)

[3] The Policy defines "operations" as "your business activities occurred at the described premises." (Doc. #26-2, p. 132.)

[4] The Policy defines "period of restoration" as the "period of time that: a. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and b. Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality." (Doc. #26-2, p. 132.)

>   (2) To minimize the suspension of business if you cannot continue "operations."
>
>   (3) (a) To repair or replace any property . . . .

(Doc. #26-2, p. 36.)

Plaintiff seeks coverage under the Policy for the interruption of its business and loss of income caused by the COVID-19 pandemic. Plaintiff alleges that it is likely that customers, employees, and/or other visitors to the insured property were infected with COVID-19, and therefore COVID-19 was likely present on Plaintiff's premises. (Doc. #26, ¶¶ 3, 21–24.) Plaintiff alleges that COVID-19 "transmits both through droplets, when someone sneezes and coughs, and aerosols, which are produced by normal breathing." (Doc. #26, ¶ 18.) Plaintiff also alleges that "aerosols are water droplets suspended in air and can remain suspended for hours," "aerosols can spread widely through air flow and settle on surfaces," and that a person "can unknowingly touch an infected surface, later touch their face, and become infected." (Doc. #26, ¶¶ 19–20.) Plaintiff further alleges that "the presence of COVID-19 on property impairs its value, usefulness, and/or normal function" and "renders physical property unsafe and unusable[.]" (Doc. #26, ¶¶ 25–26.)

In an effort to slow the spread of COVID-19, on March 24, 2020, the Director of Public Health and Human Services for Columbia, Missouri, issued a Stay at Home Order requiring non-essential businesses to close. On April 3, 2020, the Director of Missouri's Department of Health and Senior Services issued a similar, state-wide Stay at Home Order. As a result of the Columbia and state-wide orders (collectively, the "Executive Orders"), Plaintiff was not permitted to open its store for more than five weeks. Plaintiff alleges it suffered a direct physical loss of, and damage to, its property as a result of the presence of COVID-19 and the resulting Executive Orders. (Doc. #26, ¶¶ 50, 83, 86, 92.) Further, Plaintiff alleges it "was forced to

3

suspend its business and suffered a staggering loss of income as a result of COVID-19 and these [Executive Orders]." (Doc. #26, ¶ 4.)

Plaintiff submitted a claim to Owners for coverage under the Policy based on losses incurred due to the Executive Orders and COVID-19 pandemic. Owners denied coverage, and Plaintiff subsequently filed suit in the Circuit Court of Boone County, Missouri. Owners removed this case to federal court and filed a motion to dismiss Plaintiff's original state court complaint. The Court found Plaintiff's state court complaint failed to state a claim for which relief could be granted, but granted Plaintiff's request to file an amended complaint and denied the first motion to dismiss without prejudice. (Doc. #20.)

Plaintiff's Amended Complaint: asserts a claim for breach of contract based on Business Income and Extra Expense coverage (Count I); seeks a declaratory judgment that the Business Income provision of the Policy was triggered by direct physical loss of and damage to Plaintiff's property due to the Executive Orders (Count II); and, in the alternative, seeks a declaratory judgment that the Business Income provision of the Policy was triggered by direct physical loss of and damage to Plaintiff's property due to the presence of COVID-19 on Plaintiff's premises and resulting Executive Orders (Count III). Owners filed the pending motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court addresses the parties' arguments below.

## II. LEGAL STANDARD

Rule 12(b)(6) provides that a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). When deciding a motion to dismiss, "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable." *Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (citations and quotation marks omitted).

Because this case is based on diversity jurisdiction, "state law controls the construction of [the] insurance policy[.]" *J.E. Jones Const. Co. v. Chubb & Sons, Inc.*, 486 F.3d 337, 340 (8th Cir. 2007). Under Missouri law, "[t]he interpretation of an insurance policy is a question of law to be determined by the Court." *Lafollette v. Liberty Mut. Fire Ins. Co.*, 139 F. Supp. 3d 1017, 1021 (W.D. Mo. 2015) (quoting *Mendota Ins. Co. v. Lawson*, 456 S.W.3d 898, 903 (Mo. App. W.D. 2015)). "Missouri courts read insurance contracts 'as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written.'" *Id.* (quoting *Thiemann v. Columbia Pub. Sch. Dist.*, 338 S.W.3d 835, 840 (Mo. App. W.D. 2011)). "Insurance policy are to be given a reasonable construction and interpreted so as to afford coverage rather than to defeat coverage." *Cincinnati Ins. Co. v. German St. Vincent Orphan Ass'n, Inc.*, 54 S.W.3d 661, 667 (Mo. App. E.D. 2001).

"Policy terms are given the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 763 (8th Cir. 2020) (applying Missouri law) (quotation marks omitted). When interpreting policy terms, "the central issue . . . is determining whether any ambiguity exists, which occurs where there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract." *Id.* (quotation marks omitted). If the "insurance policies are unambiguous, they will

5

be enforced as written absent a statute or public policy requiring coverage. If the language is ambiguous, it will be construed against the insurer." *Id.* (quotation marks omitted).

### III. DISCUSSION

Owners's overarching argument in support of its motion to dismiss is that the Amended Complaint fails to allege Plaintiff suspended its operations, or otherwise took any covered action, due to a direct physical loss of or damage to Plaintiff's property. Owners contends Plaintiff alleges it only suspended its operations because of the Executive Orders—and not because of a direct physical loss of or damage to property—which does not trigger Business Income and Extra Expense coverage. Plaintiff argues it alleges a direct physical loss because of the presence of COVID-19 on its premises, and that it suspended its operations because of that physical loss or damage, thus adequately stating a claim for Business Income and Extra Expense coverage. As explained below, the Court finds Count I and Count III adequately state a claim upon which relief can be granted, while Count II fails to state a claim and should be dismissed.

#### A. Plaintiff Has Adequately Alleged a "Direct Physical Loss" Under the Policy

Owners argues that the Amended Complaint does not allege a physical loss of or damage to Plaintiff's property. Specifically, Owners contends that while Plaintiff alleges that COVID-19 may render property unsafe and unusable, "Plaintiff never alleges that *its store* was unsafe or unusable." (Doc. #29, p. 12) (emphasis in original). Plaintiff argues it alleges the presence of COVID-19 on its premises, that the virus's presence rendered Plaintiff's property unsafe and unusable, and that Plaintiff in turn suffered direct physical loss of or damage to its property.

Upon review of the record, the Court finds that Plaintiff has adequately stated a claim for a direct physical loss. As the Policy does not define a "direct physical loss," the Court must in turn "rely on the plain and ordinary meaning of the phrase." *Vogt*, 963 F.3d at 763. The Court

6

Case 2:20-cv-04211-SRB   Document 38   Filed 02/16/21   Page 6 of 15

elects to adopt the definition of direct physical loss used in *Studio 417* and, upon applying that definition to the factual allegations in the Amended Complaint, finds Plaintiff has adequately alleged a claim for a direct physical loss. *See Studio 417, Inc. v. The Cincinnati Ins. Co.*, No. 20-cv-03127, 478 F. Supp. 3d. 794, 2020 WL 4692385, at *4 (W.D. Mo. Aug. 12, 2020) (discussing dictionary definitions of "direct" ("characterized by a close logical, causal, or consequential relationship"), "physical" ("having material existence: perceptive especially through the senses and subject to the laws of nature"), and "loss" ("the act of losing possession" and "deprivation") in determining the plain and ordinary meaning of the phrase direct "physical loss"); *see also Blue Springs Dental Care, LLC v. Owners Ins. Co.*, No. 20-cv-00383, --- F. Supp. 3d. ---, 2020 WL 5637963, at *4 (W.D. Mo. Sept. 21, 2020) (adopting the *Studio 417* definition of "direct physical loss" while interpreting materially similar insurance policies issued by Owners).

Here, Plaintiff alleges a causal relationship between COVID-19 and its alleged losses. Plaintiff alleges that COVID-19 "transmits both through droplets . . . and aerosols" which "suspend in the air . . . until gravity ultimately forces them to the nearest surface below." (Doc. #26, ¶¶ 18–19.) Plaintiff also alleges that "[d]ue to the volume of customers coming into Plaintiff's business, it is highly likely that COVID-19 was present on Plaintiff's premises." (Doc. #26, ¶ 24.) Plaintiff additionally alleges "the presence of COVID-19 on property impairs its value, usefulness and/or normal function and causes 'direct physical loss of or damage to' property." (Doc. #26, ¶ 25.) Plaintiff further alleges that a person "can unknowingly touch an infected surface, later touch their face, and become infected." (Doc. #26, ¶ 20.) In sum, Plaintiff has alleged a direct physical loss due to COVID-19. At the very least, because of how COVID-19 is transmitted, a reasonable inference can be drawn from Plaintiff's allegations that an infected person was plausibly in its store and infected its property, thereby making the property

unsafe and unusable. Based on these allegations, the Amended Complaint plausibly alleges a direct physical loss based on "the plain and ordinary meaning of the phrase." *Vogt*, 963 F.3d at 963.

Owners cites *K D Unlimited Inc. v. Owners Inc. Co.*, No. 1:20-cv-2163-TWT, 2021 WL 81660 (N.D. Ga. Jan 5, 2021), in support of its proposition that Plaintiff does not adequately allege a direct physical loss to its property. The Court declines to follow *K D Unlimited*, as it does not find Georgia law persuasive when the interpretation of the Policy at issue is determined by Missouri law.[5] *See J.E. Jones Const. Co.*, 486 F.3d at 340. As the Court discussed in *Studio 417*, its interpretation of "direct physical loss" is supported by Eighth Circuit and Missouri case law. *See Studio 417*, 2020 WL 4692385, at *4–*6 (collecting cases) (discussing the interpretation of "direct physical loss" in the context of Missouri and Eighth Circuit law).

Owners also argues that Plaintiff's allegations merely speculate that COVID-19 was on its property, and such speculation is insufficient to state a claim upon which relief can be granted. However, as explained above, Plaintiff tenders more than mere "naked assertions devoid of further factual enhancement" in its Amended Complaint. *Iqbal*, 556 U.S. at 662. The Court finds Plaintiff does not need to prove the existence of COVID-19 in its store at this stage of the litigation. Instead, Plaintiff only needs to plausibly state a claim for which relief can be granted. Discovery will shed light on the merits of Plaintiff's allegations, including the nature and extent of COVID-19 on its premises.

---

[5] For similar reasons, the Court declines to follow *Karmel Davis & Assocs. v. Harford Fin. Servs. Grp., Inc.*, No. 20-cv-02181-WMP, 2021 WL 420372 (N.D. Ga. Jan 26, 2021). These Georgia cases highlight the impact state law variations have on the interpretation of insurance contracts. *K D Unlimited* and *Karmel Davis* ruled in favor of the defendant insurer and, relying on Georgia case law which interprets "direct physical loss" as unambiguous, held COVID-19 does not directly change property as contemplated by Georgia law. *K D Unlimited*, 2021 WL 81660, at *4; *Karmel Davis*, 2021 WL 420372, at *4. Contrary to Georgia law, the Eighth Circuit, applying Missouri law, found the provision "[t]his policy insures against loss of or damage to the property insured . . . resulting from all risks of direct physical loss" is "ambiguous and, thus, must be construed in [the insured's] favor." *Hampton Foods, Inc. v. Aetna Cas. & Sur. Co.*, 787 F.2d 349, 351-52 (8th Cir. 1986).

8

Finally, Owners argues that dismissal is warranted because other courts have held that the presence of COVID-19 does not constitute a direct physical loss. To the extent Owners suggests that the Court's holding is an outlier, the Court disagrees. A number of courts have expressly concurred with the Court's interpretation of direct physical loss as it relates to business income coverage. *See, e.g.*, *Goodwill Indus. of Orange Cnty., Cal. v. Philadelphia Indem. Ins. Co.*, No. 30-2020-01169032-CU-IC-CXC, at 3 (Superior Ct. Cal. Orange Cnty. Jan. 28, 2021) (holding allegations of the presence of COVID-19 at the plaintiff's properties when government closure orders were issued is sufficient to state a claim for business interruption coverage); *Cherokee Nation v. Lexington Ins. Co.*, No. CV-20-150, at 9 (Okla. D. Ct. Cherokee Cnty. Jan. 29, 2021) (holding "direct physical loss" includes the presence of COVID-19 at the plaintiff's properties because it deprived the plaintiff of the intended use of those properties). Still, the Court reiterates that the interpretation of insurance contracts is a matter of state law, and in this case specifically, Missouri law.[6] The Court encourages the parties to focus their research efforts accordingly.

### B. Counts I and III Adequately State a Claim Upon Which Relief Can be Granted for Policy Coverage

Owners argues that even if Plaintiff did suffer a direct physical loss, Plaintiff did not suspend its operations or otherwise take any covered action due to the alleged direct physical loss, thereby precluding Plaintiff from recovering under the Business Income or Extra Expense coverages in the Policy. Plaintiff contends it alleges Business Income and Extra Expense losses that are covered by the Policy and dismissal is inappropriate. The Court addresses each coverage issue below.

---

[6] Moreover, many of the cases relied upon by Owners are distinguishable because they involved policies with a virus exemption.

9

Case 2:20-cv-04211-SRB   Document 38   Filed 02/16/21   Page 9 of 15

### 1. Counts I and III: Business Income Coverage

Owners contends that to qualify for Business Income coverage, the Plaintiff must "1) suspend its operations 2) due to the physical loss of or damage to property that 3) required a period of restoration," and the Amended Complaint fails to allege facts in support of any of these requirements. (Doc. #29, p. 9.) Plaintiff disagrees, claiming its allegations are similar to the allegations in *Studio 417* and *Blue Springs* and, as such, adequately state a claim for Business Income Coverage. The Court agrees with Plaintiff and finds both Counts I and III state a claim for Business Income coverage.

#### a. Suspension of Operations due to COVID-19 on Plaintiff's Property

Owners asserts that "Plaintiff has repeatedly and consistently made clear that its store was closed due solely to the Executive Orders" and because the Executive Orders alone do not constitute a direct physical loss, Plaintiff's lost income is not covered by the Policy. (Doc. #29, p. 13.) Plaintiff argues that Owners ignores the factual allegations in the Amended Complaint and erroneously relies on the original state court complaint. Upon review of the record, the Court finds the Amended Complaint adequately alleges it suspended its operations due to its alleged direct physical loss.

Owners, in part, relies on *BBMS, LLC v. Cont'l Cas. Co.*, No. 20-0353-CV-W-BP, --- F. Supp. 3d.---, 2020 WL 7260035 (W.D. Mo. Nov. 30, 2020) in support of its contention that Plaintiff has not adequately alleged it suspended its operations due to a direct physical loss. *BBMS* holds that "stay at home orders and the existence of COVID-19, alone, does not qualify as 'direct physical loss of or damage to' property[.]" *BBMS*, 2020 WL 7260035, at *4 (holding the plaintiff failed to allege a "direct physical loss" because the complaint was void of facts indicating COVID-19 was present on the plaintiff's property). In turn, Owners contends that if

10

Plaintiff only closed its business because of the Executive Orders and not because of the presence of COVID-19 on its property, then Plaintiff has not stated a claim for Business Income coverage. The Court previously adopted the *BBMS* reasoning when it held Plaintiff's original state court complaint failed to state a claim upon which relief could be granted. However, the Court finds the Amended Complaint satisfies the *BBMS* holding.

First, as previously explained, Plaintiff adequately alleges that the COVID-19 virus caused a direct physical loss on its premises. Second, the Amended Complaint expressly states that "Plaintiff was forced to suspend its business and suffered a staggering loss of income as a result of COVID-19 and these [Executive Orders]." (Doc. # 26, ¶ 4.) Count I reincorporates the allegations of direct physical loss and seeks compensatory damages "'for the actual loss of Business Income' and Extra Expenses suffered while Plaintiff's business was impaired due to COVID-19 and the Executive Orders." (Doc. #26, ¶ 67.) Count III also reincorporates the prior direct physical loss allegations, further alleges that Plaintiff's losses are a consequence of the physical presence of COVID-19 and the Executive Orders, and seeks a declaratory judgment that the Business Income provisions have been triggered due to the presence of COVID-19 on its premises and resulting Executive Orders. In turn, Plaintiff does not allege it suspended its operations due to the COVID-19 pandemic generally, but instead due to a direct physical loss caused by the presence of COVID-19 on its premises. These allegations satisfy the *BBMS* holding. *See BBMS*, 2020 WL 7260035, at *5 (granting the plaintiff's oral request to amend its complaint to allege "that the virus was present in and on its premises") (relying on *Studio 417*'s interpretation of direct physical loss). Owners's arguments more challenge the nature, scope, and scale of Plaintiff's alleged loss, which is better resolved at the summary judgment stage, after the parties have had the benefit of discovery.

The Court is also not persuaded by the other arguments advanced by Owners in support of its position. For example, Owners cites the claim letter Plaintiff sent to Owners, which is attached to and incorporated in the Amended Complaint. As a threshold determination, "a court ruling on a motion to dismiss under Rule 12(b)(6) may consider materials attached to the complaint." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 921 (8th Cir. 2001). Plaintiff's claim letter, which it sent to Owners on April 16, 2020, states in relevant part:

> NECO's sales began a noticeable decrease on March 20, 2020, and the store then complied with subsequent restriction and closure orders from the local and state civil authorities. The cause of the loss was a combination of factors including customers staying home, public health officials encouraging social distancing and the orders of the civil authorities noted above.

(Doc. #26-3, p. 1.) Owners argues that the lack of any mention of COVID-19's presence, or that such presence caused Plaintiff to suspend its operations, is proof that Plaintiff did not suspend its operations because of COVID-19's presence. However, the Court does not believe that the claim letter alone warrants outright dismissal of this case. The claim letter does not foreclose the possibility that other reasons may have contributed to Plaintiff's suspension of its business, including the presence of COVID-19.

Owners also argues Plaintiff's original state court complaint affirmatively states Plaintiff's Business Income losses were not caused by an outbreak of COVID-19 on Plaintiff's property, and Plaintiff cannot argue the opposite in the Amended Complaint. However, "[i]t is well-established that an amended complaint [supersedes] an original complaint and renders the original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). As such, the Court need not consider the state court complaint in its analysis. Even if the Court did consider the allegations in the original state court complaint, the Court does not find the Amended Complaint directly contradicts the state court petition or that the allegations in

the Amended Complaint are otherwise inappropriate. In turn, Plaintiff's Amended Complaint satisfies Plaintiff's burden at this stage in the litigation.

### b. Period of Restoration

Owners additionally argues that the Amended Complaint fails to establish a "period of restoration" and contains no factual allegations showing that Plaintiff "took any remedial action" or "repaired, rebuilt, or replaced" its property. (Doc. #29, p. 17.) Plaintiff argues its allegations in the Amended Complaint are sufficient to survive dismissal, drawing comparisons to the *Studio 417* and *Blue Springs* complaints. The Court finds that Plaintiff has adequately alleged a period of restoration. As discussed earlier in this Order, Plaintiff alleges it suspended its operations, its store was not permitted to open for more than five weeks, and that the suspension was, at least in part, due to a direct physical loss. Discovery will ultimately show whether Plaintiff's alleged closure was the "actual date when the alleged physical loss occurred, the duration of that alleged physical loss, at what point in time the insured propert[y] could or should have been repaired, rebuilt, or replaced, and whether Plaintiff[] took those restoration measures." *Blue Springs*, 2020 WL 5637963, at *6.

In turn, Counts I and III state a claim for Business Income coverage under the Policy, and survive dismissal.

### 2. Count I: Extra Expense Coverage[7]

Owners's arguments for Extra Expense Coverage are similar to its arguments regarding Business Income coverage. Owners contends the Amended Complaint does not allege Plaintiff suspended its operations due to a direct physical loss, does not identify a period of restoration, nor allege it incurred any "extra expenses" as defined by the Policy. However, the Court

---

[7] The Court notes that Count III seeks a declaratory judgment "that the Business Income provision of the Policy has been triggered" and does not mention Extra Expense coverage.

13

Case 2:20-cv-04211-SRB   Document 38   Filed 02/16/21   Page 13 of 15

previously found the Amended Complaint's allegations on these issues sufficient, and at this early stage Plaintiff does not have to allege with specificity the itemized extra expenses it has allegedly incurred.

In sum, the Court finds Count I states a claim for breach of contract for Business Income and Extra Expense Coverage. The Court also finds that Count III states a claim for declaratory judgment that the Business Income provision has been triggered. Accordingly, both Count I and Count III survive dismissal.

### C. Count II Fails to State a Claim for Policy Coverage

The Court finds Count II fails to state a claim upon which relief can be granted. While Count II incorporates the facts discussed above, Count II only seeks a declaratory judgment that the "Policy has been triggered by direct physical loss of and damage to Plaintiff's property due to the Executive Orders." (Doc. #26, p. 14.) However, as previously discussed, "stay at home orders and the existence of COVID-19, alone, does not qualify as 'direct physical loss of or damage to' property[.]" *BBMS*, 2020 WL 7260035, at *4. At best, Count II is duplicative of Count III, except that Count III specifically references the presence of COVID-19 as triggering the Business Income provision. At worst, Count II seeks declaratory judgment solely to the extent the Executive Orders alone caused a direct physical loss, a theory of recovery this Court previously rejected. (Doc. #20.) Given that Count II relies on Policy coverage solely due to the Executive Orders, it fails to state a claim upon which relief may be granted. Accordingly, Count II is dismissed.

### IV. CONCLUSION

Accordingly, it is hereby **ORDERED** that Owners's Motion to Dismiss Amended Complaint (Doc. #28) is GRANTED IN PART and DENIED IN PART. The motion to dismiss

14

Case 2:20-cv-04211-SRB    Document 38    Filed 02/16/21    Page 14 of 15

is GRANTED insofar as Count II is dismissed. The motion is DENIED regarding Count I and Count III.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH, JUDGE
UNITED STATES DISTRICT COURT

DATE: February 16, 2021